**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GERALD DUNLEAVY and**<br>**KIMBERLY DUNLEAVY, W/H,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**ENCOMPASS HOME & AUTO**<br>**INSURANCE COMPANY,**<br>**Defendant.** | **CIVIL ACTION**<br><br><br><br>**NO.  20-1030** |

**DuBois, J.**                                                              **September 10, 2020**

**M E M O R A N D U M**

### I.        INTRODUCTION

This is a suit for underinsured motorist ("UIM") benefits against defendant, Encompass Home & Auto Insurance Company ("Encompass"), arising out of an automobile accident on May 21, 2017. Plaintiffs, Gerald and Kimberly Dunleavy, allegedly suffered multiple injuries as a result of the accident, and settled their claims against the tortfeasor. In their Complaint against Encompass, they assert claims of breach of contract (Count I), bad faith (Count II), and loss of consortium (Count III).

Presently before the Court is defendant's Motion to Dismiss plaintiff Gerald Dunleavy's statutory bad faith claim under 42 Pa. Const. Stat. § 8371 or, in the alternative, to sever or bifurcate and stay the bad faith claim until plaintiffs' other claims are resolved.  For the reasons that follow, defendant's Motion is denied.

### II.       BACKGROUND

The facts below are drawn from plaintiffs' Complaint.  The Court construes that Complaint in the light most favorable to the plaintiffs, as it must in ruling on a motion to dismiss.

On or about May 21, 2017, Gerald Dunleavy was lawfully operating his motor vehicle on Route 113 in Franconia Township, Montgomery County, Pennsylvania.  A third-party tortfeasor driving in the opposite direction negligently and "violently collided" with Gerald Dunleavy's vehicle, causing him "severe and grievous" permanent injuries. Compl. ¶ 9.

On the date of the collision, the third-party tortfeasor's vehicle was underinsured. Plaintiff's vehicle was insured under a policy issued by defendant with underinsured motorist limits of $500,000 per person and $1,000,000 per accident (the "policy").  On or before December 4, 2019, the third-party tortfeasor tendered $47,000 of his $50,000 policy limit to settle plaintiffs' claims against him.  Plaintiffs then "requested underinsured motorist benefits and consent to settle the third-party claim from [d]efendant." Compl. ¶ 15.  Defendant "granted consent to settle on or about December 10, 2019."  Compl. ¶ 15.

Plaintiffs stated in the Complaint that, although they have "complied with all the terms and conditions" of the policy, defendant has not tendered plaintiffs UIM benefits, made plaintiffs any settlement offers, or conducted any investigation into plaintiffs' claims.  Compl. ¶ 24. Further, according to plaintiffs, defendant has "play[ed] a cat and mouse" game with plaintiffs by "continuously and systematically failing to communicate any offer of settlement or denial of benefits," misleading plaintiffs as to potential settlement on at least nine occasions, and "purposefully ignoring [plaintiffs'] demand for underinsured motorist benefits."  Compl. ¶ 32.

Plaintiffs filed their Complaint on February 21, 2020, alleging three counts.  Gerald Dunleavy asserts breach of contract (Count I) and bad faith (Count II) claims.  Kimberly Dunleavy asserts a loss of consortium claim (Count III).

On February 26, 2020, plaintiffs mailed defendant a request for waiver of service.  The letter requested a response within thirty days, by March 27, 2020.  In the letter, plaintiffs wrote,

"Should our office not receive the Waiver within thirty (30) days, we will then arrange to have the Summons and Complaint served upon you by a process server and in turn, will ask th[e] Court to require you to pay the expenses of making that service."  Plaintiffs' Response Ex. A at 1.  Defendant received the request on March 2, 2020 but did not file the waiver of service until April 20, 2020.  In the time between March 27, 2020 and April 20, 2020, plaintiffs did not serve defendant.  On April 20, 2020, plaintiffs filed the signed waiver with the Court.

Defendant filed this Motion to Dismiss the bad faith claim for failure to state a claim on April 23, 2020.  Alternatively, defendant asks this Court to sever or bifurcate and stay the bad faith claim until the other claims are resolved.  Plaintiffs filed their Response on May 5, 2020.  In the Response, plaintiffs allege, *inter alia*, the Motion to Dismiss was filed late and is, therefore, time barred.  Defendant filed its Reply on May 11, 2020.  The Motion is thus ripe for review.

### III.    LEGAL STANDARD

"The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint."  *Nelson v. Temple Univ.*, 920 F. Supp. 633, 634 n.2 (E.D. Pa. 1996).  To survive a motion to dismiss, plaintiffs must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  In assessing the plausibility of the plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007).  Such allegations are "not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to

determine whether it states a plausible claim for relief. *Id.* at 680. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## IV.   DISCUSSION

To state a cause of action for bad faith, a plaintiff must show by clear and convincing evidence "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." *Klinger v. State farm Mut. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997) (citing *Terletsky v. Prudential Property and Casualty Insurance Company*, 649 A.2d 680, 688 (Pa. Super. 1994)). The term "bad faith" "encompasses a wide variety of objectional conduct," *Condio v. Erie Insurance Exchange*, 899 A.2d 1136, 1142 (Pa. Super. 2006), including "(1) a frivolous or unfounded refusal to pay; (2) a failure to investigate into the facts; or (3) a failure to communicate with the insured." *Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 140 (E.D. Pa. 2007). A bad faith cause of action must be predicated on the enforcement of some right under an insurance policy, but it exists separately and independently from the underlying contract claim. *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 529-30 (3d Cir. 1997). An insured may include the underlying breach of contract claim and the bad faith claim in the same complaint. *Id.*

In this Motion to Dismiss for failure to state a claim, defendant argues (1) the bad faith claim is not ripe because its success necessarily depends on the resolution of plaintiff's underlying breach of contract claim; and (2) alternatively, the bad faith claim should be bifurcated or severed and stayed until the underlying claim is resolved. In their Response, plaintiffs argue, *inter alia*, defendant's Motion to Dismiss was untimely filed because it was not

filed within twenty-one days of defendant's receipt of the request for waiver of service.  The Court addresses each argument in turn.

### A.  Defendant's Motion to Dismiss was Timely Filed.

In their Response, plaintiffs argue defendant's Motion to Dismiss was untimely filed because it was not filed within twenty-one days of defendant's receipt of plaintiff's Rule 4(d) request for waiver of service.  Plaintiffs seemingly contend that, because defendant did not sign the waiver of service within the thirty-day window requested by plaintiffs, defendant did not waive service.  Therefore, according to plaintiffs, service was effective on the date defendant received plaintiff's request for waiver of service – March 2, 2020 – and defendant had twenty-one days – until March 23, 2020 – to file a motion to dismiss.  Because this Motion was filed on April 23, 2020, plaintiffs contend it is untimely.  The Court rejects this argument.

Plaintiffs confuse their request for waiver of service with proper service itself.  A Rule 4(d) request for waiver of service is not effective service.  *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992).  Rather, if a defendant declines to waive service, the plaintiff must then effectuate proper service.  Plaintiffs recognized this requirement in their request for waiver of service.  The letter specifically states, "Should our office not receive the Waiver within thirty (30) days, we will then arrange to have the Summons and Complaint served upon you by a process server and in turn, will ask th[e] Court to require you to pay the expenses of making that service." Plaintiffs' Response Ex. A at 1.  Although defendant did not file the waiver by plaintiffs' deadline, plaintiffs did not "arrange to have the Summons and complaint served" on defendant. Plaintiffs' Response Ex. A at 1.  Rather, plaintiffs "seek impermissibly to transform their [March 2, 2020] waiver request into proper service." *Karcsh v. Bd. of Dirs. Ventura Country Club Cmty.*

*Homeowners Ass'n*, No. 10-4965, 2011 WL 1740626 (E.D. Pa. May 5, 2011). The request for waiver was not proper service of the Summons and Complaint, and plaintiffs' argument fails.

In any event, plaintiffs are equitably estopped from relying on defendant's waiver of service to avoid effectuating service and simultaneously arguing the waiver was ineffective. "The doctrine of equitable estoppel, which [the Court] may raise *sua sponte*, is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Karcsh*, 2011 WL 1740626, at *4 (internal quotations omitted). As stated above, plaintiffs informed defendant that, if defendant did not waive service within thirty days, plaintiffs would arrange for service of the Summons and Complaint. Despite the fact that defendant did not meet this deadline, plaintiffs never served defendant with copies of the Summons and Complaint. Instead, when defendant belatedly signed the waiver, plaintiffs filed the waiver with the court, representing to the Court and to defendant that they had accepted defendant's waiver. Defendant reasonably relied on that representation in filing its Motion to Dismiss three days later and would be prejudiced if the Court allowed plaintiffs to now contradict that representation. *See Karcsh*, 2011 WL 1740626, at *4. Accordingly, the doctrine of equitable estoppel prevents plaintiffs from having it both ways; they cannot rely on defendant's waiver to avoid effectuating service while arguing the waiver was ineffective. Under Rule 4, defendant had sixty days from February 26, 2020, the date plaintiffs sent the request for waiver of service, to file a motion to dismiss. Fed. R. Civ. P. Rule 4(d). Defendant filed the Motion to Dismiss on April 23, 2020, within that sixty-day period. Therefore, the Motion is timely.

### B.  The Bad Faith Claim is Ripe.

Defendant argues the bad faith claim is not ripe because its resolution necessarily depends on the resolution of the other claims.  Specifically, defendant argues plaintiffs will only be able to prove bad faith if they can prove their damages exceed the settlement amount reached with the third-party tortfeasor, which a jury must determine.  This boils down to the argument that a bad faith claim is not ripe until the underlying breach of contract claim is resolved.  This argument has been repeatedly rejected in other cases, and this Court rejects it in this case.

Success on a statutory claim for bad faith does not necessarily depend on the success of the underlying breach of contract claim.

> A claim for bad faith brought pursuant to § 8371 is a separate and distinct cause of action and is not contingent on the resolution of the underlying contract claim.  A plaintiff may succeed on its bad faith claim even if it fails on the underlying breach of contract claim.  Additionally, courts interpreting § 8371 have consistently entertained multi-count complaints containing both unresolved insurance contract disputes and bad faith claims.

*Doylestown Elec. Supply Co. v. Maryland Casualty Ins. Co.*, 942 F. Supp. 1018, 1019-20 (E.D. Pa. 1996). (internal citations omitted).  This is because "[a] finding that the insured did not ultimately have a duty to cover the plaintiff's claim does not per se make the insured's actions reasonable" in hindsight.  *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 244 F. App'x 424, 434-35 (3d Cir. 2007).  Therefore, so long as the underlying contract claim is ripe, the bad faith claim is also ripe.  *See also Polselli*, 126 F.3d at 530 (citing *Doylestown*).

Plaintiffs allege defendant acted in bad faith by failing to properly investigate their insurance claim, engage in settlement discussions, and communicate with them.  This is "a separate and distinct" cause of action from plaintiff's claim that defendant breached the terms of the policy in failing to pay UIM benefits.  *Doylestown*, 942 F. Supp. at 1019.  As such, a finding that defendant does not owe plaintiffs UIM benefits would not mandate a finding that defendant

7

did not act in bad faith in handling the insurance claim.  As plaintiffs explain, "Hindsight does not eradicate Bad Faith."  Pl. Resp. to Mot. to Dismiss, at 7.  Accordingly, the bad faith claim is ripe.

### C.  Severance and Bifurcation are Inappropriate.

Defendant alternatively requests that the Court sever or bifurcate and stay the bad faith claim until the breach of contract claim is resolved.  Defendant uses the terms "sever" and "bifurcate" interchangeably.  As the applicable standard for determining those issues is the same, the Court addresses both arguments together.

Federal Rule of Civil Procedure 21 allows a court to sever a claim into a separate cause of action.  Fed. R. Civ. P. 21.  Federal Rule of Civil Procedure 42 allows a court to bifurcate claims in a single cause of action into multiple trials. Fed. R. Civ. P. 42(b).  A court's decision on whether to sever or bifurcate claims requires balancing three factors: "the convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation."  *Eizen Fineburg and McCarthy, P.C. v. Ironshore Specialty Ins. Co.*, 319 F.R.D. 209, 211 (E.D. Pa. 2017) (Rule 42); *Frederick & Emily's, Inc. v. Westfield Group*, 03-cv-6589, 2004 WL 1925007, at *1 (E.D. Pa. Aug. 27, 2004) (Rule 21).  The court has broad discretion in determining whether to grant severance or bifurcation.  *Kimmel v. Cavalry Portfolio Services, LLC*, 747 F. Supp.427, 434 (E.D. Pa. 2010).

Defendant alleges that the balancing factors favor severance or bifurcation because (1) the breach of contract and bad faith claims require different procedures and standards that cannot be conveniently comingled; (2) allowing the claims to proceed simultaneously would prejudice defendant; and (3) if plaintiffs fail on their breach of contract claim, the bad faith claim is necessarily moot.  The Court addresses each factor in turn.

### 1.  Different Procedures and Standards

Defendant argues the differing procedures and standards of the two claims cannot be conveniently comingled.  Defendant identifies three claimed differences between the claims: (1) the breach of contract claim will be resolved through a jury trial, while the bad faith claim will be resolved through a bench trial; (2) a preponderance of the evidence standard applies to the breach of contract claim while a clear and convincing evidence standard applies to the bad faith claim; and (3) different facts are at issue in each claim. In response, plaintiffs argue there is factual overlap between the two claims.

The Court disagrees with defendant's argument that the bad faith claim will be tried in a bench trial in federal court.  Although Pennsylvania state courts hear bad faith claims in bench trials, federal courts have found a constitutional right to a jury trial for such claims.

> Although the insurance bad faith statute uses the term "court," and Pennsylvania state courts have held that there is no state-law right to a jury trial in statutory bad faith actions, *see Mishoe v. Erie Ins. Co.*, 824 A.2d 1153 (Pa. 2003), both the Third Circuit and this Court have previously held that the Seventh Amendment confers a right to a jury trial in bad faith actions in federal court. *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 236 (3d Cir. 1997); *Fahy v. Nationwide Mut. Fire Ins. Co.*, 885 F. Supp. 678, 679 (M.D. Pa. 1995).

*Swoboda v. Travelers Personal Ins. Co.*, No. 3:16-cv-00314, 2018 WL 4680131, at *7 n.4 (M.D. Pa. Sept. 28, 2018).  *See also Pratt v. Victoria Ins. Co.*, No. 10-1629, 2020 WL 4611000, at *1 (E.D. Pa. Nov. 12, 2010).  Plaintiffs timely demanded a jury trial in their Complaint, and the Seventh Amendment affords them that right.  Therefore, the Court rejects defendant's argument that the bad faith claim requires a bench trial.

Defendant's second argument regarding differing standards of proof is also unconvincing.  Juries are capable of hearing and deciding claims with differing evidentiary standards.  *See Frederick & Emily's*, 2004 WL 1925007, at *3 (rejecting identical argument and

explaining "[j]uries commonly determine claims of civil fraud—which must be proven by clear and evidence evidence—along with claims subject to a preponderance of the evidence standard").  In fact, courts routinely allow breach of contract and bad faith claims to proceed to trial together, despite the differing evidentiary standards.  *See, e.g.*, *Hofkin v. Provident Life & Acc. Ins. Co.*, 81 F.3d 365, 368 (3d Cir. 1996) (reviewing district court's grant of judgment as a matter of law following a jury trial for both breach of contract and bad faith claims); *Wagner v. Allstate Ins. Co.*, No. 5:14-cv-07326, 2016 WL 233790, at *4 (E.D. Pa. 2016) (joining "the sizeable majority of the federal district courts in Pennsylvania" by denying defendant's motion to bifurcate plaintiff's breach of contract and bad faith claims); *Suscavage v. Nationwide Mut. Ins. Co.*, No. 3:05cv501, 2008 WL 2278082, at *2 (M.D. Pa. June 3, 2008) (denying defendant's motion to bifurcate in part because "[p]roper instruction to the jury and argument from counsel will allow the jury to comprehend the different causes of action and separate them").

Finally, the Court rejects defendant's third argument regarding differences in the facts involved in each claim. The Court agrees with plaintiffs that there is significant factual overlap between the two claims such that it would be more convenient to have a single trial.  "While the focus of the bad faith claim is on [defendant's] conduct, [defendant's] investigation did not occur in a vacuum.  Whether [defendant] acted in good faith must be determined by reference to the circumstances surrounding the automobile accident and the nature of the injuries that Plaintiffs suffered." *Wagner*, 2016 WL 233790, at *4.  For example, one of plaintiffs' assertions in the bad faith claim is that defendant failed to conduct an adequate investigation into plaintiffs' injuries.  This requires inquiry into two facts (1) the extent of plaintiffs' injuries, and (2) the extent of defendant's investigation into those injuries.  The breach of contract claim also requires inquiry into the extent of plaintiffs' injuries.  A separate trial on the bad faith claim would

10

require plaintiffs to present much of the same evidence to the second jury, "duplicating in many respects the presentation to the first jury." *Id.* This would be expensive and time-consuming for all parties. Because of the factual overlap between the claims, it would be more convenient to have a single trial in this case. Accordingly, the convenience factor weighs against severance or bifurcation.

### 2. Prejudice

On this factor, defendant contends that allowing discovery and trial for the claims to proceed simultaneously would prejudice defendant because discovery in the bad faith claim would require defendant to disclose the claim adjustor's mental impressions, conclusions, and opinions as to the merits of the case, evidence that is not discoverable in the breach of contract case. Def.'s Mot. to Dismiss at 5. To the extent that the claim adjustor's work product is protected, defendant's argument is unconvincing.

"[A] mere claim of bad faith is not enough to shatter the work-product privilege." *Wagner*, 2016 WL 233790, at *3. Rather,

> The Federal Rules of Civil Procedure and longstanding judicial precedent protect work product from disclosure—protections that do not disappear merely because work product prepared in anticipation of litigation over one claim may also be relevant to a second claim. Allowing the claims to proceed simultaneously simply means [defendant] will be called upon to prove its entitlement to work product protection . . . .

*Id.* Although proceeding with the bad faith claim might require defendant to assert its work product privilege over documents prepared in anticipation of trial, the procedural safeguards are sufficient to protect defendant's interests from prejudice. *See also Eizen Fineburg and McCarthy, P.C.*, 319 F.R.D. at 213 (finding that the possibility of defendant asserting work-product privilege protection during discovery of both breach of contract and bad faith claims was not prejudicial). Accordingly, the prejudice factor weighs against severance or bifurcation.

11

### 3.   Judicial Economy

Defendant's argument as to this factor is that, should plaintiffs fail on their breach of contract claim, the bad faith claim will be moot.  As explained above, that is an incorrect statement of the law. Plaintiffs' bad faith claim is based, in part, on defendant's failure to investigate plaintiff's insurance claims and communicate with plaintiffs regarding their claims. "A finding that the [insurer] did not ultimately have a duty to cover the plaintiff's claim does not per se make the [insurer's] actions reasonable" in hindsight. *Gallatin Fuels, Inc.*, 244 F. App'x at 434-35.  Whether defendant ultimately owes plaintiff benefits under the policy is distinct from whether defendant appropriately handled the claims.

To the contrary, a single trial promotes judicial economy because it avoids duplication of effort by the parties across multiple trials.  Although the contractual and bad faith claims present distinct legal issues, the underlying facts overlap.  Therefore, "[b]ifurcation would essentially double the life of this action requiring a second discovery period, more dispositive motions, more pretrial motions, and a completely separate trial," much of which would concern the same factual basis. *Griffith v. Allstate Ins. Co.*, 90 F. Supp. 3d 344, 347 (M.D. Pa. 2014).  Accordingly, the judicial economy factor weighs against severance or bifurcation.

### V.      CONCLUSION

All three factors weigh against severance or bifurcation in this case.  It will be more convenient to have a single trial because of the factual overlap between the breach of contract and bad faith claims, procedural safeguards will protect defendant's privileged work product, and it will be more expeditious to allow discovery and trial to proceed simultaneously.  For these reasons, the Court denies defendant's request to sever or bifurcate and stay the bad faith claim.

The Court also denies Defendant's Motion to Dismiss plaintiff's bad faith claim for the reasons discussed above. An appropriate order follows.